Emmet, J.
The return of the sheriff of the city and county of Hew York, to the habeas corpus issued in this case, states that John W. Latson is held and detained by Mm in custody, under and by virtue of an attachment issued out of the Surrogate’s Court of Westchester county.
The attachment, which is part of the return, after reciting certain proceedings before the surrogate of Westchester coimty, in the matter of the estate of Jonathan Purdy, deceased, commands the sheriff to arrest the said Jqhn W. Latson, and bring Mm before the said surrogate, on the 14th April inst., to answer for his misconduct and contempt, in not obeying a certain order or decree, made on the 19th of July last, in the court of the said surrogate, on the final accounting of the said John W. *697 Latson, as administrator, with the will annexed, of the estate of the said Jonathan Purdy, by which he was ordered to pay over certain moneys in his hands, and due from him to the said estate, within ten days from the. date of such order or decree.
. Among the objections made to the return in this case, it was urged (in reference to the sufficiency of this attachment on its face), that surrogates’ courts are not courts of record; and as this attachment is a proceeding as for a contempt to enforce a » civil remedy, and the power of punishing in such cases by fine and imprisonment, is in terms conferred upon courts of .record, by the Revised Statutes (part 3d, chap. 8, Tit. 13, § 1), it may be proper briefly to consider that question.
A Surrogate’s Court, as a court recognised by law, is the creature of the statute. Previous to the revision of 1830, the officers known as surrogates exercised a jurisdiction so undefined, as to create an apprehension that serious questions might arise from it, and to suggest the propriety of constituting surrogates’ courts by law, and of defining and limiting their powers by clear and distinct enactments, They were classified, therefore, as courts of peculiar and special jurisdiction, and their duties were distinctly prescribed by statute (R. S., Part 3d, ch. 2, Tit. 1).
Among the powers thus conferred on them, was that of enforcing all lawful orders and decrees by attachment against the persons of those who should neglect, or refuse to comply with such orders and decrees, which attachment should be in form similar to that used in the Court of Chancery in analogous cases (§ 6, subd. 4).
They were also empowered, in the same manner, to the same extent, and with like effect, as courts of record;
To punish witnesses for disobedience to subpoenas, or refusing to testify (ib., subd. 2);
To exemplify transcripts of them records (subd. 5);
To punish open and direct contempts in court (subd. 6);
And to issue process to, and exact obedience from, all sheriffs, jailors, coroners, or other executive officers (§ 9).
From these provisions it is pretty clear that although surrogates’ courts may not be strictly courts Of record in all their attributes, they can exercise certain powers, only incident to, *698 and characteristic of, such tribunals; one of the highest' of which is the power of punishing.by fine and imprisonment, an authority which Blackstone (3d Comm. 24) asserts, cannot be exercised by any other court than a court of record, adding, that “ the very creation of a new jurisdiction, with the power of fine or imprisonment, makes it instantly' a court of record.”
I consider the attachment in this case, therefore, in the same light as if it had been issued by a court of record, within the intent of the Eevised Statutes, in relation to proceedings as for contempt to enforce civil remedies, &c. (Tit. 13, ch. 8, part 3d.) Or in other words, that the term “ courts of record,” in § 1 of that Title, embraces any court having the same power as courts of record have, to' enforce its orders and decrees, for the payment of money, by attachment against"the person; and it may fairly be inferred that the Legislature intended to put surrogates’ courts on the same footing, in this respect, with courts . of record, from the fact that the 20th section of the Title, in relation to surrogates’ courts, expressly provides that the 10th, 12th, 13th sections,.and section 16th to the 32d of the Title, in relation to proceedings as for contempt to enforce civil remedies, &c., shall apply to attachments issued by surrogates.'
§ 1 of the Title referred to provides, that every court of record shall have power to punish by fine and imprisonment, or either, all persons (subd. 3), for the non-payment of any sum of money ordered by such court to be paid, in cases where by law execution cannot be awarded for the collection of such sum, &c.
The power of the court to cause the arrest- and commitment of a party, for not paying money ordered by such court to be paid, is here expressly limited to cases Where such money cannot be legally collected by execution.
As the law stood in relation to surrogates’ courts, under the Eevised Statutes, there was no provision for enforcing an order or decree of such a court, for the payment of money by execution. The only mode prescribed for that purpose, was by attachment against the person, under the 4th subd. of the 6th section of Title 1, chap. 2, part 3. The above limitation in § 1 of Tit. 13, ch. 8, part 3d, could, therefore, under the Eevised *699 Statutes, have had no application to the powers of surrogates’ courts in such cases.
But an act was passed concerning the proof of wills, &c., on Hay 16th, 1837 (ch. 460, p. 535), by the 63d, 64th, and 65th sections of which it was provided that after any decree made by a surrogate for the payment of money by "an executor, administrator, or guardian, he should make a certificate, stating the names of the parties against, and in favor of, whom the decree was made, with the amount of debt and costs, directed to be paid by such decree; which certificate should be filed by the clerk of the Supreme Court, and such decree docketed, which thenceforth should be a lien on the lands of the person against whom it was made; also, that execution should issue thereon in the same manner as though the same was a judgment obtained in the Supreme Court, and that if such execution should be issued and returned unsatisfied, the surrogate should, on application, assign the bond given by, such executor, administrator, or guardian, to the person in whose favor such decree was made, for the purpose of being prosecuted.
This was modified by the act regulating liens upon real estate by judgments and decrees, passed April 1, 1844, by which the 64th section of the above act of 1837 was repealed, and as a substitute for it, it was provided that on filing the surrogate’s certificate with the clerk of any county, the same should be entered and docketed as a judgment, and should thenceforth be a lien on all lands, &c., of the party against whom the decree was made in such county, and that execution should be issued thereon in the same manner as if it were a judgment recovered in the Court of Common Pleas of such county.
As the law now stands, therefore, the above limitation does in my judgment apply to the powers of surrogates’ courts, and operates as a prohibition against the issuing of an attachment against the person of any party against whom an order or decree has been made for the payment of money.
. Whether any certificate of the surrogate’s decree in this case has been actually filed, or any judgment docketed, or execution thereon issued, does not appear, nor is it material. It can be done, and therefore execution can be awarded for the collection *700 of the amount ordered to be paid. It is, therefore, directly within the limitation expressly imposed by § 1, Tit. 13, chap. 8, part 3d, upon the power of punishing by attachment for the nonpayment of money.
This case, as presénted by the return, is simply that' of a debt due by an administrator. Whatever the fact may be, it does not appear that he refuses to pay with the ability to do so, or that there are any circumstances of fraud attending his indebtedness, which subject him to a more rigorous application of the law than should be administered to any ordinary debtor who cannot pay.
The debt, it is true, was incurred in the character of administrator, but that trust was committed to him under a bond, with surety, which may be prosecuted for his default, and which affords, therefore, an additional remedy for any party to whom he may be indebted.
The late chancellor decided in the case of Hosack v. Rogers, 11 Paige, 603, that since the passage of the act to abolish imprisonment for debt, a decree against an executor, directing the payment of money, could not be enforced by attachment, and that the remedy was by execution against the property of the executor. And the present surrogate of this county, in the case of Doran v. Dempsey (1 Bradford R. 490), while he asserts the power of surrogates to enforce all lawful orders, processes, and decrees, by attachment, avows that it is entirely in opposition to the spirit and scope of the recent legislation on the subject of civil remedies against debtors, to have recourse to that power to imprison a party for not complying with the requisitions of a decree directing a money payment, unless the-debt has been fraudulently contracted, or the party against whom the decree was made, wilfully retains possession of funds or assets still in his hands, or refuses to pay when he has the means of doing so.
In this case, however, I place my decision distinctly upon the terms of the 1st section of Tit. 13, ch. 8, part 3d, of the Revised Statutes, and upon the limitation contained in the 3d subdivision of that section; and viewing that as a prohibition against the remedy by attachment to enforce the order or decree of a surrogate’s court for the payment of money, for the *701 collection of which an execution can he issued, I am of opinion that no legal cause is shown for the arrest or detention of John W. Latson, and therefore discharge him from the custody or restraint under which he is held, as appears by the return to the habeas corpus.
Düee, J., concurred.