### BIRCHELL *vs.* STRAUSS and others.

Where a person, who is actually insolvent, purchases goods on credit, upon the strength of his own representations that he is solvent and responsible, yet he is not liable to arrest, in an action brought to recover the value of the goods, if, at the time he made the representations, he believed them to be true.

In all cases in which fraud is charged, proof of an actual intent ought to be required, to justify or sustain an order of arrest. The constructive guilt of a debtor, who is innocent in fact, should not be held a sufficient ground for his imprisonment.

Although there be circumstances attending and following the execution of an assignment of his property, by a debtor, which may be evidence of constructive fraud, sufficient to set aside the assignment, yet they will not be deemed evidence, *per se*, of an actual fraudulent intent on the part of the debtor, furnishing sufficient ground for his imprisonment.

An assignment of *all* the debtor's property, stated to be "more particularly enumerated and described in a schedule thereof" thereto annexed, marked A. is not void by reason of the omission to annex the schedule. Nor is such omission evidence of even a constructive fraud.

APPEAL by the defendants from an order made at a special term, denying a motion to vacate an order of arrest. The material facts appear in the opinion of the court.

*E. & E. F. Brown* and *Waldo Hutchins,* for the appellants.

*J. J. Townsend,* for the respondent.

*By the Court,* DAVIES, P. J. The defendants were arrested upon an order made by Justice Sutherland, dated July 2, 1858. The order was granted upon two affidavits, one made by the plaintiff and the other by his attorney. The affidavit of the plaintiff states that in July, 1857, he sold goods to the defendants, upon the faith of representations made by Abraham Emanuel, one of the defendants, to the effect that the firm of the defendants were responsible and engaged in a flourishing and profitable business, and he swears that he sold the goods to the defendants "solely upon the faith of said representations." He then proceeds to detail the subsequent acts and proceed-

ings of the defendants; that they failed on the 12th of September, 1857, and had made an assignment; that after such purchase they had sold goods to two brothers of the defendant Emanuel, which had not been paid for in full, and had done other acts, and from all which he states, and "therefore alleges, and his allegations are founded on the circumstances before detailed, that at the time of purchasing said goods, the defendants were insolvent and unable to pay their indebtedness in full, and that they then knew of such insolvency; and that such representations were false and untrue and then known to be so by said defendants." The plaintiff therefore alleges, and his allegations are founded on the circumstances aforesaid, "that the defendants, at the time of incurring the above indebtedness, were not engaged in a flourishing or profitable business, and that they were guilty of a fraud in contracting the debt for which this action is brought." The affidavit of the plaintiff's attorney contains no new fact, beyond annexing thereto a copy of the assignment made by the defendants, and the statement that at the time of its execution no schedule of the property assigned was annexed thereto, and that none was annexed until some three weeks thereafter.

The defendants, by their affidavits, deny in the most positive terms, any representation made to the plaintiff of the character stated by him, and they swear that the goods were purchased by *Joseph* and not by *Abraham* Emanuel, as stated by the plaintiff, at Germantown in Pennsylvania. That Abraham Emanuel was not present when the purchase was made, but was in the city of New York; and Joseph swears that he purchased the goods not of the plaintiff but of his clerk, and that the plaintiff was not present at the time. That the defendants had purchased goods of the plaintiff since August 8, 1856, and had paid for all of such purchases except the last, and that this purchase was made in the same manner as the other, and that he made no representation whatever to induce such sale, or any representation of the kind stated by the plaintiff.

Isaac Emanuel, not one of the defendants, states that he

Birchell *v.* Strauss.

was present at Germantown when Joseph Emanuel purchased the goods. That neither the plaintiff nor Abraham Emanuel were present. That no questions were asked Joseph of the character stated by the plaintiff; and that he made no representation of the kind stated by the plaintiff, or any representations as to the solvency of the defendants. That the goods were then sold to Joseph by a clerk of the plaintiffs.

We think, therefore, from this testimony, we are bound to assume that the plaintiff is mistaken in stating that he sold the goods to Abraham Emanuel, and that at the time of such purchase Abraham Emanuel, or either of the other defendants, made to the plaintiff the representation stated in his affidavit, or any representations whatever; and that he is consequently mistaken in stating that he sold said goods "solely upon the faith of said representations." Upon the assumption that the representations, as stated by the plaintiff, had been made, and the goods sold on the faith of them, the facts stated by the plaintiff, showing their falsity, are very feeble. The correct rule on this subject is well laid down by BALCOM, justice, in *Gaffney* v. *Burton*, (12 *How.* 516.) He says, in that case, the affidavit upon which the defendant was arrested does not show "that the defendant knew that the representations were false, which he made, as to his ability to pay, before or at the time he purchased the goods of the plaintiff. If he believed his representations were true at the time he made them, he was not guilty of any fraud, however false they may have been." In the present case no fact is stated, tending to show that if the representation had been made the defendants had reason to believe the same was not then true. The fact of the purchase on the 10th of July, 1857, and the subsequent failure on the 12th of September in that year, is far from being conclusive proof of a fraudulent intent, when connected with the history of that period, and the great changes which took place in those two months in the financial condition of the most solvent institutions and firms in this city and throughout the country. And the defendants state that during this

period they paid to their creditors over the sum of $64,000, and purchased goods in the usual course of their business, on credit, to the amount of only about $30,000. And during the same period they sustained losses by the failure of other firms, in the aggregate, to over the sum of $40,000. I find it impossible upon these facts, assuming the representations to have been made, to believe that the defendants knew them to be false at the time. On the contrary it seems to me they had every reason to suppose they were, on the 10th of July, 1857, solvent.

But it was earnestly urged on the argument, that the order of arrest should be retained, on the ground that the defendants had been guilty of fraud in making the assignment; or, in other words, that the assignment being fraudulent and void, the defendants were guilty of fraud, and should not be discharged.

It seems to me that the language of the late Chief Justice Duer, concurred in by his associates, in *Spies* v. *Joel*, (1 *Duer*, 669,) is quite pertinent on this point. He says: "It may be true, as the counsel for the plaintiffs has contended, that the court of appeals, by its recent decision, has settled the law, that the omission in an assignment giving preferences, of any provision relative to a possible surplus, is evidence of a fraudulent intent, which renders the assignment void under the statute. But in my judgment it is only a *constructive* fraud which is thus established, for I cannot regard the omission as evidence, *per se*, of an actual intent existing in the mind of the debtor and governing his act, and I am clear in the opinion that it is proof of an actual intent that in all cases in which fraud is charged, ought to be required to justify or sustain an order of arrest. The constructive guilt of a debtor, who is innocent in fact, can never be held by me to be a sufficient ground for his imprisonment." In these views I entirely concur; and applying them to the present case, they dispose of the grounds upon which we are asked to retain this order of arrest. They are, 1st. That the conveying clause referred

to a schedule for the description of the assigned assets, which was not in existence and never attached. 2d. No change of possession of the assigned estate. 3d. That an immediate delivery of the assigned property did not take place. 4th. That some of the preferred debts do not appear in the defendant's books. 5th. The assignees' refusal to give information as to the condition of the assets.

These positions, if established, may be evidence of constructive fraud, sufficient to set aside the assignment, but we fail to see that they are evidence per se of an actual fraudulent intent on the part of the defendants, furnishing sufficient ground for their imprisonment. The first objection was mainly relied on upon the argument, and it was insisted that the omission to annex the schedule was conclusive evidence of the intent to defraud. The case of *Moir* v. *Brown*, (14 *Barb.* 39,) was relied on as establishing this position. In that case the assignors granted to their assignees "All and singular the lands, &c., &c., more particularly enumerated and described in the schedule hereto annexed, marked A ; to have and to hold, &c." The court held in that case that the schedule was made part of the conveyance and was referred to as containing a specification of property conveyed, and was intended to be annexed. That in such a case it must be annexed, not only as a description and specification of the property, but it is necessary by the very terms of the instrument to complete the conveyance or transfer, and that in that case the assignment was insensible, and as against creditors, did not convey the property to the assignees.

In the present case the language used in the recitals of the assignment, is "Whereas the said parties of the first part are indebted, &c., and are desirous to make arrangements for the payment thereof by an assignment of *all their property and effects* for that purpose," and then they grant, &c. "All and singular the goods, chattels, stocks, promissory notes, debts, things in action, claims, demands, property and effects, belonging to the said parties of the first part or either of them,

(except such property as may be by law exempt from sale on execution,) the same being more particularly enumerated and described in a schedule thereof hereto annexed, marked schedule A." The assignment also authorizes the assignees "to ask, demand, recover and receive of and from all and every person and persons, *all* the property, debts and demands belonging and owing to the said parties of the first part."

The language used in this assignment is identical with that employed in the case of *Platt* v. *Lott,*(a) decided in the court of appeals, June, 1858, and to which we have been referred. Selden, justice, in giving the opinion of the court in that case, says: "If, in looking at the assignment in this case, we are able clearly to see that it was the intent of the assignors to convey to the assignees the whole of their property, we are bound to give effect to that intent. Were this question to depend solely upon the main clause in the instrument, I should have very little doubt as to the design with which it must have been executed. Not only the general terms in which that clause is couched, embracing as they do all the property of the assignors, both real and personal, but the emphatic language with which, as we have seen, it concludes, viz: "of every description, belonging to the said parties of the first part, or in which they have any interest whatever," would seem to manifest a plain intent to convey every thing which the assignors possessed. It is true this clause is followed by the words, "the same being more fully and particularly enumerated and described in a schedule," &c. This, however, by no means indicates an intention to qualify or limit the broad and comprehensive language previously used. A schedule would, of course, be necessary as a matter of convenience, and as a guide to the assignee; and the provision for its annexation, although it is thereby made a part of the assignment, does not warrant the inference that it was intended that if any portion of the property of the assignors should be omitted, which might well occur through accident

(a) 3 E. P. Smith, 478.

E. B. *v.* E. C. B.

or inadvertence, the title to such property should not pass to the assignee." He says, also, that this construction is strengthened by the fact that the assignment expressly recites that the assignors were desirous of providing for the payment of their debts, "by an assignment of *all their property* and effects for that purpose."

We must, therefore, hold that this case is an authority in point, for the position that the assignment now under consideration is not void by reason of the omission to annex the schedule mentioned therein, and that such omission is not evidence of even a constructive fraud, in this case.

It certainly cannot be regarded as evidence of a fraudulent intent, warranting us to hold the defendants under an order of arrest.

The order appealed from must therefore be reversed, with costs, and the order of arrest be vacated.

[NEW YORK GENERAL TERM, November 4, 1858. *Davies, Clerke* and *Ingraham*, Justices.]