THE PEOPLE, *ex rel.* George Caldwell, *vs.* JOHN KELLY, Sheriff, &c., FELIX COLLUMB and JOHN A. ISELIN.

Where a proceeding upon *habeas corpus* is had before a judge as an officer, and not as a court, a writ of *certiorari* to review the proceedings, is properly directed to him.

The writ of *certiorari*, in such a case, is properly allowed by a justice of the supreme court.

And it is regular to make the writ returnable at a general term.

But it is improper to make the writ returnable in a different *district* from that in which the proceedings on the *habeas corpus* were had.

One who is imprisoned on execution is unlawfully detained if there be no judgment, or if the judgment be one on which an execution against the person cannot issue, by law.

Upon a writ of *habeas corpus*, the officer has a right to inquire into the validity of the process under which the relator is imprisoned; notwithstanding it appears to have been issued on the judgment or decree of a court of competent jurisdiction.

In such a case, the question is not one of mere irregularity in the process. It is whether the process is authorized by the judgment of the court, or by any provision of law.

Where, in an action by judgment creditors, against the judgment debtor, and others, to set aside certain instruments made by the debtor, conveying his property, as alleged, with intent to hinder, delay and defraud his creditors, the referee finds a part of the instruments to be void, not for actual or *active* fraud, on the part of the debtor, but for *constructive* fraud, or fraud in law, without finding that such instruments were executed with *intent* to defraud creditors; and judgment is thereupon entered, declaring those instruments to be fraudulent and void, and awarding *costs* against the judgment debtor, the latter is not liable to *arrest* and imprisonment upon an execution issued on such judgment. ROSEKRANS, J. dissented.

These facts will not justify the conclusion that the judgment debtor has disposed of his property with *intent* to defraud his creditors, within the meaning of subdivision 5 of section 179 of the code of procedure.

That provision of the code means fraud in fact — meditated fraud — a purpose existing in the mind to do a dishonest act. *Per* BOCKES, J.

No order of arrest is authorized, in a suit in equity to set aside an assignment or other instrument, on the ground that it was made to hinder, delay and defraud creditors. Subdivision 5 of section 179 of the code has no application to that class of actions. *Per* BOCKES, J.

No order of arrest can be granted under that clause of the code, except in actions for the recovery of money. *Per* BOCKES, J.

In giving a construction to the statute, for the purpose of imprisoning or justifying the imprisonment of a party, as a punishment for an offense, the more

The People *v.* Kelly.

humane interpretation should prevail; and where there is no evidence of *actual* fraud in a debtor, he should not be subjected to arrest for acts only *constructively* fraudulent. *Per* POTTER, J.

CERTIORARI to review proceedings on a writ of *habeas corpus*, had before a justice of this court acting as a justice at chambers.

By the return it appears that the defendants, Collumb & Iselin, being judgment creditors of the relator, George Caldwell, commenced an action in this court against him and others, to set aside certain instruments, (five in number,) on the ground that they were made to hinder, delay and defraud his creditors. The action was put at issue and was referred to a referee, who having heard the proofs and allegations of the parties made his report, by which he found and decided that *three* of the instruments were good and valid, and that *two* were void. As regards the latter, the referee found and decided as follows: " That the assignment, dated April 17, 1848, executed by George Caldwell to M. & F., was *fraudulent and void* as against the judgments of the plaintiff." " That the chattel mortgage executed by George Caldwell to J. R., dated March 1, 1848, was *void* as against the plaintiffs and their judgments." But he nowhere found or decided that those instruments, or either of them, were made with *intent to defraud creditors*. The referee awarded costs to the defendants R. & J. W. Caldwell against the plaintiffs Collumb & Iselin, and costs in the plaintiffs' favor, as against the relator, George Caldwell.

Judgment was entered upon the report of the referee, in accordance with the findings and directions therein contained. The costs awarded to Collumb & Iselin, against Caldwell, were adjusted at $554.93, for which sum judgment was entered against him. The clause of the decree relating to these costs is as follows:

" And it is further ordered, adjudged and decreed, that the plaintiffs recover of and from the defendant George Caldwell

their costs of this action, as taxed, being five hundred fifty-four $\frac{93}{100}$ dollars, and have execution therefor."

Execution was issued against the property of the relator, for these costs, and on its return unsatisfied, an execution against the person of Caldwell was issued, under which he was arrested and imprisoned, in New York. Thereupon he presented his petition to Mr. Justice Sutherland, setting forth his imprisonment, with the cause thereof, to which petition was attached a copy of the execution under which he was held, and praying for the writ of *habeas corpus*, to the end that he might be discharged. The writ was granted, returnable the same day. Proceedings were thereupon had, Collumb & Iselin having been duly notified, appearing and opposing the application, which terminated in an order directing the relator's discharge from arrest; the judge holding and deciding that the execution was unauthorized by law. On the application of Collumb & Iselin, a certiorari issued to review those proceedings.

The writ of certiorari was tested March 28, 1861, returnable before the justices of the fourth district at the then next May general term.

The case comes before the court, *first*, on a motion to set aside or quash the writ of certiorari, on the ground that the writ was made returnable before the court in the fourth district, and *secondly* on the return, in case the motion to quash should be denied.

*F. Kernan* and *Ira D. Warren*, for the relator.

*W. D. White*, for the defendants.

BOCKES, J. It appears from the papers that the proceedings were before Judge Sutherland as an officer, and not as a court. The petition for the writ of *habeas corpus* was addressed to "Hon. Josiah Sutherland, justice of the supreme court," who allowed the writ, by indorsing thereon his allow-

The People *v.* Kelly.

ance as follows—"Allowed this eleventh day of March, 1861, Jos'h Sutherland, Justice," and was returnable before one of the justices of the court at chambers. It was returned to him at the time and place therein appointed, and thereupon proceedings were had before him, which resulted in his granting and signing an order for Caldwell's discharge, on the 27th March following. The order is entitled at special term, but it is signed by the justice, and such entitling does not vitiate it. It was said, *In the matter of the Knickerbocker Bank*, (19 *Barb.* 602,) that the mere entitling an order as at special term, which by law may be made by a judge out of court, does not vitiate the order.

Nor is the entry of the order with the clerk of any importance, on this motion. Such entry cannot affect the question whether the writ of certiorari to bring up the proceedings was regularly issued. I am not aware of any practice which requires an order of discharge, granted by a judge out of court, in a proceeding on *habeas corpus*, to be entered. The code has no application to these proceedings. (*Code*, § 471.) But the former practice still prevails, in such cases.

The proceeding is before an officer out of court; and while it is well to deposit all papers in such case with the clerk, with a view to their preservation, there is no statute or rule of practice which requires the orders in cases of that nature to be entered.

It appearing, therefore, that Judge Sutherland acted as an officer—as a judge out of court—in issuing the habeas corpus, and in granting the discharge of Caldwell, the writ of certiorari was properly directed to him. And following the old practice, it was regular also to make the writ of certiorari returnable at general term. The writ, too, was properly allowed by a justice of this court. (2 *R. S.* 573, § 69; 3 *id.* 892, § 85, *5th ed.*) The question is then simply, whether, inasmuch as the proceeding was held before an officer in the first judicial district, the writ is regular in being made returnable in the fourth district.

This is purely a question of practice, with no statute or express rule of court to control. It grows out of the change in our judicial system by which the state is divided into eight districts, each of which has its own general term of the court. In most cases the code of procedure provides for the decision of causes, declaring where they shall be heard and determined; generally requiring them to be heard and decided in the district in which the case arose, or the parties, or some of them, reside. Sometimes the case is permitted to be carried into an adjoining district. But the general rule of practice has been to require causes to be heard, on review, in the district in which the proceeding was had; and it is very manifest that this is a wholesome rule, based on considerations of propriety and convenience.

It is urged that the writ is properly returnable in the fourth district, for the reason that the record on which the execution issued, under which the relator was imprisoned, is in the fourth district. But that fact does not affect the question.

The proceeding by habeas corpus was an original proceeding in the city of New York. The relator was there imprisoned, and there were had the proceedings for his discharge, making the record here sought to be reviewed. The return to the writ of certiorari is made from the papers before the officer, with his certificate of the proceedings and determination. Where the evidence used on that proceeding was obtained has no controlling influence, in determining where the review should be had. The question is simply whether it is permissible for a party to take a case for review on certiorari from the district in which the proceeding was had, to any other which the applicant for the writ may select. To allow this would be against all analogy in practice, and would be conducive, often, of great inconvenience.

In analogy to other cases in which the practice is settled, either by the statute or by precedent, I think the writ in this case irregular, for the reason that it is made returnable in the fourth instead of in the first district.

The People *v.* Kelly.

But we are inclined to disregard this irregularity, and to consider the case on the return; here, however, declaring the practice by which we shall be governed in future cases. We are induced to adopt this course, inasmuch as we entertain no doubt in regard to jurisdiction, and the case has been. fairly and carefully argued before us.

It is first insisted that the officer had no right to inquire into the regularity of the process under which the relator was imprisoned; it appearing that it was issued on the judgment or decree of a court of competent jurisdiction. But the question is not one of mere irregularity in the process. It is whether the process is authorized by the judgment of the court or by any provision of law.

The statute prescribes who shall be entitled to prosecute the writ of habeas corpus, and denies it to persons committed or detained by virtue of any final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon any such judgment or decree. It also declares that it shall be the duty of the court or officer before whom the party shall be brought, on such writ, to inquire into the cause of the confinement or restraint, and to remand such party if it shall appear that he is detained in custody by virtue of any such judgment or decree, or of any execution issued thereon. The statute further declares, that if it appear on the return of the writ that the prisoner is in custody by virtue of civil process, &c., then "*such person can only be discharged in one of the following cases;*" enumerating several, among which are the following: when the process, though in proper form, has been issued in a case not allowed by law, and where the process is not authorized by any judgment, order or decree of any court, nor by any provision of law. (2 *R. S.* 568, §§ 40, 41; 3 *id.* 887, §§ 55, 56, 5*th ed.*) By declaring that the prisoner can only be discharged in certain cases when in custody under civil process, it is clearly implied that he shall be discharged in such cases; that is, when it should appear on the return of the writ

that the process, though in proper form, had been issued in a case not allowed by law, or when the process was not authorized by any judgment, order or decree of any court, nor by any provision of law. So it was held at special term that the process of execution may be impeached by showing it to be unauthorized by the judgment on which it issued. (26 *Barb.* 78.) In the case cited, judgment was obtained against the defendant for negligence as an inn-keeper. An execution issued against his person, under which he was arrested and imprisoned. He was discharged on *habeas corpus;* the court holding that the judgment did not show a cause for arrest. The point was taken, as it is here, that the right to issue the execution could not be inquired into on *habeas corpus.* But the court held that the regularity and propriety of the arrest under the execution might be examined into, so far as to determine whether the party had any right or authority to issue the process. I am satisfied this was correctly held. In this view it becomes a question of jurisdiction. The question is whether the process has the sanction and authority of law. If there be no authority to arrest the party, he should be discharged. Certainly if there were no judgment there would be no authority for the execution, and this the relator could show on the return of the writ. So, also, if the execution on the judgment be unauthorized by law, it stands as if there were no judgment. Therefore it has been well said that final process may, in all cases, be impeached, by showing either that there is no judgment, decree or conviction on which it is founded, or that the judgment, decree or conviction is void, or that the judgment does not show a case authorizing the execution on which a party is arrested. (*Crary's Practice,* 120, *and cases cited.* 12 *Wend.* 229.) In the case last cited, Beatty was imprisoned on a *ca. sa.* for costs, issued on a decree in chancery. He was discharged on *habeas corpus,* on the ground that he could not be imprisoned on an execution, for such costs. True, section 42 declares that no court or officer, on the return of

The People *v.* Kelly.

a *habeas corpus,* shall have power to inquire into the legality or justice of any process, judgment, decree or execution specified in the preceding twenty-second section. But this doubtless was intended to prohibit the use of this writ as a means of reviewing the judgment and decision of courts and officers. It is not competent, under the writ of *habeas corpus,* to inquire into the truth of the facts determined by the record, or the justice or legality of the adjudication, by virtue of which a party is detained, except as to jurisdiction. But jurisdiction may be inquired into; also whether it has been exercised in a lawful manner. It follows, therefore, that a person is unlawfully detained who is imprisoned under execution, if there be no judgment, or if the judgment be one on which an execution against the person cannot issue by law.

This brings us to the question whether the execution under which Caldwell was imprisoned was authorized by the judgment on which it issued.

The code prescribes the mode of enforcing judgments by execution. It declares that writs of execution for the enforcement of judgments are modified in conformity thereto, (§ 283,) and gives three kinds—one against the property of the judgment debtor—another against his person—and the third for the delivery of the possession of real or personal property, with or without damages for withholding the same. (§ 286.) In regard to executions against the person, it provides that such execution may be issued if the action be one in which the defendant might have been arrested as provided in sections 129 and 181. (*See* § 288.) The action by Collumb & Iselin against Caldwell and others was to set aside certain instruments made by Caldwell, conveying his property, as was alleged, to hinder, delay and *defraud* his creditors, and for other relief usual in such cases. Could Caldwell have been arrested under sections 179 and 181 of the code? Section 179 declares that the defendant may be arrested in either one of the five cases there specified, none of which need here be noticed, except the fifth, which provides that a de-

fendant may be arrested who has "removed or disposed of his property, or is about to do so, *with intent* to defraud his creditors." No order of arrest was obtained in the action. Therefore it becomes necessary to look into the record for the purpose of determining whether the action falls within the provisions of the 5th subdivision of section 179, above set out. The complaint charges in general terms, that certain instruments executed by Caldwell, disposing of his property, were made *with intent* to hinder, delay and *defraud* his creditors. On this, issue was taken, and the referee, to whom the action was referred, finds three of the instruments attacked good and valid, and two void, not however for actual or *active* fraud on the part of Caldwell, but for constructive fraud, or fraud in law. Thereupon judgment was entered declaring three instruments good and valid, and *two fraudulent and void;* also awarding costs against Caldwell. Does the record show a case for the arrest of Caldwell under section 179, if an application had been made before judgment on the facts determined by it? That is, on commencing the action, suppose the same facts were established by affidavit as are now established by the record, and an application had been made thereon for an order of arrest against Caldwell, could it have been properly granted? What would be the facts on which the application would be based? Stating all that is made to appear by the record, and they would stand as follows: that Caldwell had made dispositions of his property at various times and for different purposes by five separate instruments, two of which were void; that all were made by him in good faith, with no dishonest purpose; but that two of them were in law constructively fraudulent. Could it be found, on these facts, that he had disposed of his property with *intent* to defraud, within the meaning of subdivision 5 of section 179? I think not. The clause of the code referred to, unquestionably means fraud in fact—meditated fraud—a purpose existing in the mind to do a dishonest act. So Judge Duer said, (1 *Duer*, 669,) "I am clear in the opin-

The People *v.* Kelly.

ion the proof of an actual intent ought to be required, to justify an order of arrest. The constructive guilt of a debtor who is innocent in fact can never be held by me to be a sufficient ground of imprisonment." This I regard as a sound exposition of the law of arrest. The intent with which the act is done should control. An assignor may through ignorance—hence innocently—insert a clause in his assignment, which will render it fraudulent in law, yet be perfectly free from any meditated fraud, or design to perpetrate a wrong. In such case he ought not to suffer arrest, any more than the man who is unable to pay his note when due. The policy of the law is to punish the guilty, not to oppress the innocent. To the same effect is the decision in *Birchell* v. *Strauss*, (28 *Barb.* 293.) In that case it was held, at general term in the first district, that in all cases in which fraud is charged, proof of an actual intent ought to be required, to justify an order of arrest; that constructive guilt of a debtor, who is innocent in fact, should not be a sufficient ground for his imprisonment. This construction is in accordance with the spirit of the law abolishing imprisonment for debt, and also with an enlightened humanity.

But I am of the opinion that no order of arrest is authorized in an action in equity to set aside an assignment or other instrument, on the ground that it was made to hinder, delay and defraud creditors; that subdivision 5 of section 179 has no application to that class of actions. In such cases the creditor has already obtained his judgment, and the new action is in aid of the former, to reach property which in justice ought to be applied to its payment. The judgment is special, and rarely, if ever, does it direct the recovery of money, except for the costs of the action. In what amount should the party be held to bail? Should it be in an amount to cover costs? Or in an amount equal to the property fraudulently transferred? Or in the full amount of the judgment? If an order of arrest is authorized in this class of actions, some amendments of the code should be adopted, to regulate

the practice. If the object of holding to bail be to afford security for the payment of the debt, no order of arrest need be obtained, when the property fraudulently transferred remains within the reach of the proceeding in equity, and is sufficient to satisfy the claim and costs.

In my judgment no order of arrest can be granted under subdivision 5 of section 179, except in actions for the recovery of money. This view is strengthened by section 183, which provides that the order may be made to accompany the summons, or at any time afterwards *before judgment ;* that is, before judgment is obtained on the debt or demand, payment of which is sought to be enforced by action. But in the case of an equitable action to set aside a sale or transfer of property for fraud, the plaintiff must have exhausted his remedy at law before he can proceed. In this view the execution against Caldwell, under which he was arrested and detained, was not authorized by any judgment or order or decree of any court, nor by any provision of law.

I am entirely satisfied that the order granted by Mr. Justice Sutherland, discharging Caldwell from imprisonment, was right, and that the proceedings had before him on *habeas corpus* should be affirmed. But this being a common law certiorari, no costs can be allowed. (20 *How.* 304. 16 *id.* 43, 6.)

POTTER, J. There is but one point in this case, as I regard it, that involves an important principle requiring discussion. The relator was imprisoned upon an execution issued against him upon a judgment, or a decree, in which it had been declared that a voluntary assignment made by the relator was fraudulent and void as against the creditors of the relator, by reason of some want of compliance with the statute relative to the making of such conveyances; and he had been released from the imprisonment, upon habeas corpus, upon the ground that he was not liable to imprisonment

in such a case. This raised the question whether there is a distinction between what is called *active* or meditated fraud, sometimes called *actual* fraud, which is committed with actual *intent* existing in the mind, and governing the act of the grantor at the time; and *constructive* fraud, to wit, such as is adjudged to be fraud by reason of the doing, or omitting to do, some act in the precise manner prescribed by law. That is, whether the right to imprison the defendant in a judgment, at all, depends upon this distinction in the character of the fraud; it being undisputed that the fraud in this case was the latter, viz. *constructive* fraud. Cases are found in the books that recognize this distinction as determining the right to imprison, or at least to the right to hold a defendant liable to arrest. (*See Spies* v. *Joel*, 1 *Duer*, 696; and *Birchell* v. *Strauss*, 28 *Barb.* 293, 6.) It is not difficult to conceive of acts that may be performed, in making an assignment, through accident, inadvertence, mistake, through the influence of mistaken advice, or of the actual omission to do some act, that may be consistent with entire innocence of intent, made with simplicity of heart, or even through weakness of mind; and yet such acts, or omissions to act, must still, by the settled rules of law in regard to such transfers, be held to be fraudulent and void. Is it then the design and spirit of this statute, that the *consequence* of an act of conveyance so innocently made, and so by a necessity of law declared to be fraudulent and void as to creditors, shall subject the weak, the simple, the mistaken, or morally innocent assignor, to the same penalties of punishment, by imprisonment, as is held in regard to him who, by an *intentionally* fraudulent act, makes the conveyance with existing design at the time to commit a fraud?

The moral distinction, it seems to me, is palpable. It is exactly the difference between the *existence* and the *absence* of criminal *intent;* a difference that has ever existed in practice; has ever been recognized in the criminal code; is uniformly followed in the criminal courts in the trials of offenses

of every grade; is acknowledged as the controlling feature in the rule of evidence to determine crime; and is the basis upon which punishment is inflicted. The punishment for *homicide,* which is a general term, including what may or may not be criminal, depends upon whether the facts show it to be justifiable, excusable, or premeditated. The right to imprison for fraud is based upon the same principle. It is to punish for an offense *intentionally* committed against the moral and municipal law.

The affinity between the moral and municipal law is strikingly approximate and assimilable. The moral being the basis upon which the municipal is built, if a question of doubt arise as to the latter it should always be solved, if it may be, by a resort to the former for its determination. It is, says Lord Kenyon, a principle of natural justice of our law, that the *intention* and the *act* must both concur to constitute the crime. (7 *T. R.* 510.) *"Actus non facit reum nisi mens sit rea."* True, when the question before the court to be tried is in reference to the law regarding the transfer of property; or to the weight and consideration of the law of evidence in respect to it; and taking the law as it is now settled, it would not be an easy task, if attempted, either to attack or to weaken the very logical reasoning and conclusions of my brother ROSEKRANS, that we are bound from the act itself to presume a fraud. He is sustained when the law is so applied, in such a case, and for such a purpose, both upon principle and authority. The *intent* may, in such case, be *inferred,* because it is established by the law of evidence to be the necessary legal and natural conclusion and *consequence* of the act, or of the omission, without otherwise proving the moral intent of the party, than by this legal presumption; and this rule of evidence is made so conclusive of the existence of a *legal* fraud, so far as it affects *the contract,* as to exclude all explanation of innocence of intent.

In the construction to be given to a statute which author-

The People *v.* Kelly.

izes punishment of fraud, when the proof is made in a *civil* action, there is, or there should be, no difference in holding the rule; it should be the same if the party was on trial for the same offense in a criminal action, to wit, that fraud is never to be presumed; it must be proved.  Indeed this is the rule in all other civil actions, where fraud is the basis of the right to recover.  *Dwarris,* in his work on the *Construction of Statutes,* (*p.* 634,) lays down the rule, "that the general words of a penal statute shall be restrained for the benefit of him against whom the penalty is inflicted."  *Domat* lays down the rule, "that laws that restrain natural liberty ought to be so interpreted as to receive all practical mitigation in favor of equity and humanity;" and Professor *Lieber,* in his *Legal and Political Hermeneutics,* (*p.* 266,) says, "nothing contributes more to the substantial protection of individual liberty, than a habitually close interpretation and construction."  It seems to be conceded that, in this case, there is not any evidence of what, in the ordinary sense of the term, is denominated *actual* fraud, or, as it is sometimes called, *meditated fraud,* as contradistinguised from *constructive* fraud, which, as we have seen, may result from an omission to *act.  Actual* fraud implies deceit, artifice, trick, design, some *direct,* active operation of the mind.  *Constructive* fraud is *indirect,* and may be implied from some other act, or omission to act, which may be, in moral contemplation, entirely innocent; but which, without the explanation, or actual proof of its innocence, is evidence of fraud.

It appears to me, therefore, that in giving construction to this statute for the purpose of imprisoning, or of justifying the imprisonment of a party as a punishment for an offense— a construction upon which depends the restraint of individual, natural liberty—the more humane interpretation should prevail.  Liberty and freedom are man's natural conditions; presumptions should be in favor of this construction.  This is the proper, and should be the universal rule, in the admin-

istration of human laws, and I think should be applied to the decision of this case.

I concur, therefore, in the views of my brother BOCKES, in affirming the action of the officer upon the habeas corpus.

ROSEKRANS, P. J.    The relator was arrested and held in custody by the sheriff of the city and county of New York, upon an execution against his body, issued upon a judgment of this court.    The judgment was rendered in an action brought by Collumb & Iselin, to set aside certain conveyances and mortgages of real estate and assignments for the benefit of creditors, and a chattel mortgage, alleged to be fraudulent as against the creditors of the relator and an obstruction to the collection of judgments obtained by said Collumb & Iselin against the relator, and the executions issued thereon. The relator presented a petition to Mr. Justice Sutherland, for a *habeas corpus*, to inquire into the cause of his detention, and upon its return the sheriff set forth the execution against the body of the relator, which was regular in form, as the process by virtue of which he arrested and detained the relator.    The relator produced the judgment upon which the execution was issued, and insisted that the process was issued in a case not allowed by law, and that the process was not authorized by the judgment.    This was the only evidence produced before the justice, and upon it the relator was discharged from arrest.    A certiorari was issued to bring up the proceedings.    The complaint in the judgment roll set out the judgments against the relator, the issuing of executions thereon, the making of the conveyances, mortgages and assignments before mentioned, and alleged that they were fraudulent in law and in fact and upon their face, and that they were made to delay, hinder and defraud the creditors of the relator.    The answer admitted the making of the conveyances, mortgages and assignments, but denied that they were fraudulent in law or in fact or upon their face, or that they were made with the intent to defraud creditors.    The action

The People *v.* Kelly.

was referred to a referee, and upon his report the judgment was entered.

The report of the referee, included in the record, contained a finding of fact that the real estate mortgage was not fraudulent, and a conclusion of law that it was legal and valid. It also contained a finding of fact that the assignment was made in trust to pay debts as therein and in the schedules thereto annexed mentioned, and a conclusion of law *upon that finding of fact,* that the assignment was fraudulent and void as against the judgments of the plaintiffs mentioned in the complaint. The judgment upon the report adjudged that said assignment was fraudulent and void against the plaintiffs' judgments set out in the complaint. Upon this evidence, alone, the learned justice who issued the writ of *habeas corpus* discharged the relator from the custody of the sheriff by virtue of the execution, and necessarily held that the action in which the execution was issued was not one in which the defendant might have been arrested as provided in sections 179 and 181 of the code of procedure. (*Code,* § 288.) He must have held *that the judgment in that action did not adjudge that the defendant therein had disposed of his property with intent to defraud his creditors.* The record showed that there was no ground for the arrest of the defendant, except for the reason stated in the 5th subdivision of section 179 of the code, which authorizes an arrest " when the defendant has removed or disposed of his property or is about to do so, with intent to defraud his creditors." The sole question, then, before us is, does the judgment record referred to show that the defendant had disposed of his property with intent to defraud his creditors. In the case of *Dunham* v. *Waterman,* (17 *N. Y. Rep.* 20, 21,) the court of appeals approve of the reasoning of Mr. Justice Nelson in *Cunningham* v. *Freeborn,* (11 *Wend.* 251,) and his conclusion that *fraud in law* is abolished by section 4 of the statute, in relation to fraudulent conveyances, (2 *R. S.* 137,) which provides that in all cases arising under that act the question of fraud-

ulent intent shall be deemed a question of fact and not of law. And in that case the court held that when an assignment contains provisions which are calculated *per se* to hinder, delay or defraud creditors, although the fraud must be passed upon as a question of fact, it nevertheless becomes the duty of the court to set aside a finding that it was not made to delay, hinder or defraud creditors, as such finding is in opposition to the plain inference to be drawn from the face of the instrument. It was also held that a party must in all cases be held to have intended that which is the necessary consequence of his acts. And in *Nicholson* v. *Leavitt,* (2 *Seld.* 517,) the same court held that a *positive intent to defraud creditors* exists where the inducement to a trust is to *delay and hinder* creditors, and that the attempt to do this is in law a fraud, and nothing else. It is apparent in this case from the record of judgment that the conclusion of the referee, that the assignment of the defendant was fraudulent as against his judgment creditors, was based upon some provision which it contained calculated, *per se,* to delay, hinder and defraud creditors. He found no fact, *outside of the assignment,* upon which he based his conclusion of law that it was fraudulent as against creditors. The evidence of fraud within itself was conclusive, and the judgment of the law was to that effect. The only ground upon which an assignment is *conclusively fraudulent as against creditors* is, that it is made with intent to hinder, delay and defraud creditors. It may be void, and adjudged void, for other reasons.

The assignment being pronounced by the judgment of the court to be fraudulent as against a judgment creditor, or, in other words, to have been made with the intent to defraud the creditors of the assignor, the execution was authorized by the judgment, and the action was one in which, by sub. 5 of section 179 of the code, an execution against the person of the defendant was proper.

There is nothing in the case of *Birchell* v. *Strauss,* (28 *Barb.* 293,) inconsistent with this conclusion. An order of

arrest had been granted, in that case, and the court was asked to retain it upon these grounds: 1st. "That the conveying clause of the assignment referred to a schedule for the description of the assigned estate, which was not in existence, and was never attached. 2d. There was no change of possession of the assigned estate. 3d. An immediate delivery of the property assigned did not take place. 4th. Some of the preferred debts do not appear in the defendant's books. 5th. The assignees' refusal to give information as to the condition of the assets." None of these grounds are conclusive evidence of fraud. DAVIS, J. says: "These positions, if established, may be evidence of constructive fraud, but we fail to see that they are evidence *per se* of *an actual fraudulent intent* on the part of the defendant, furnishing sufficient ground for their imprisonment."

In *Seymour* v. *Wilson*, (4 *Kern.* 569,) Denio, J. said: "Fraudulent conveyances are such as are made with the intent to hinder, delay and defraud creditors, or other persons, of their lawful suits. It is declared that the question of fraudulent intent shall be a question of fact and not of law, and that no conveyance shall be adjudged fraudulent as to creditors solely on the ground that it was not founded on a valuable consideration; and, moreover, the parties to such conveyances are declared to be guilty of a criminal offense. There are cases which present circumstances in themselves conclusive evidence of a fraudulent intent; and there no proof of innocent motives, however strong, will overcome the legal presumption: thus, where an insolvent debtor conveys his estate to a trustee, with a reservation in his own favor, or with some provision which the courts have determined to furnish conclusive evidence of fraud. In such cases the oath of the assignor that his motives were pure would be idle, and could not affect the determination one way or the other. But when the facts do not necessarily prove fraud, but only tend to that conclusion, the evidence of the party who made

the conveyance should be received for what it may be considered worth."

Upon inspecting the record presented to the learned justice on the return of the *habeas corpus,* he could not discover from it that the assignment of the relator was adjudged fraudulent upon the proof of facts which were not conclusive evidence of fraud, but only tended to that conclusion.

But the record itself furnished conclusive evidence of the relator's intent to defraud his creditors in making his assignment. The issue was made by the pleadings, and was passed upon, and the judge had no power to look beyond the judgment, or to inquire upon what evidence it was founded. In *Van Pelt* v. *McGraw,* (4 *Comst.* 114,) Pratt, J. says : "A man must be deemed to design the necessary consequences of his acts. If, therefore, he does a wrongful act, knowing that his neighbor will be thereby injured, he is liable. It is upon this principle that persons are often chargeable with the intent to defraud creditors, or to commit any other fraud. The immediate motive is oftentimes self interest, but if the necessary consequence is fraud upon his neighbor, the actor is legally chargeable with a design to effect that result."

In view of these authorities and principles, I do not see how the discharge of the relator upon *habeas corpus* can be sustained. The cases of *Spies* v. *Joel,* (1 *Duer,* 669,) and *Birchell* v. *Strauss,* (28 *Barb.* 293,) do not warrant the discharge, but on the contrary show that it was improper. The action in which the execution was issued was not instituted for the recovery of money due upon a judgment, but to set aside fraudulent conveyances which were an obstruction in the way of the enforcement of process upon the judgment Had it been an action in the nature of a creditor's bill, no execution could be issued against the body according to the first section of the act of 1831. (4 *Paige,* 397.) Section 179 of the code does not specify the nature of the actions in which the defendant may be arrested " where he has removed or disposed of his property, or is about to do so, with intent

to defraud his creditors," as specified in sub. 5 of that section; but that subdivision necessarily includes all actions in which the plaintiff seeks to be relieved from the effect of such fraud, and is by law entitled to such relief. The declaration, in section 178 of the code, that the provisions in regard to arrest shall not affect the act of 1831, to abolish imprisonment for debt, &c. may perhaps prohibit an arrest in actions for the recovery of money due upon contract or judgment; but the 5th subdivision of section 179 cannot have any force unless it applies to actions brought to set aside fraudulent conveyances.

I think the relator should be remanded to the custody of the sheriff.

Proceedings had before Justice Sutherland, upon the habeas corpus, and the order made by him, directing the relator to be discharged from arrest, affirmed.

[SCHENECTADY GENERAL TERM, January 7, 1862. *Rosekrans, Potter* and *Bockes,* Justices.]