SHERILL ROPER AIR ENGINE COMPANY, RESPONDENT,
*v.* WILLIAM B. HARWOOD, APPELLANT, IMPLEADED, ETC.

*Arrest — an actual and guilty intent to defraud must be shown, to subject the party to it.*

The fact that one member of a firm, with knowledge of its insolvency, has paid certain of his individual debts out of the firm moneys with the intent to give them a preference over the firm debts, is not sufficient to establish such a guilty intent to dispose of his property for the purpose of defrauding his creditors as is required to justify his arrest under the provisions of the Code of Civil Procedure.

APPEAL from an order made at a Special Term denying a motion to vacate an order of arrest.

*J. M. Ferguson,* for the appellant.

*Ellis S. Yates,* for the respondent.

DAVIS, P. J.:

It appears by the papers in this case that on the 16th day of February, 1881, William A. Harwood and William B. Harwood entered into a copartnership under the firm name of W. A. Harwood & Son in the buying and selling of goods, wares and merchandise in the city of New York.

William A. Harwood furnished the capital, $30,000, which was to be used and employed in common between them for the support and management of said business. The profits and losses were to be divided equally, and each of the partners was to give his personal attention to the business. The health of William A. Harwood, who was the father of William B. Harwood, subsequently failed and he was able to give but little attention to the business, and on or about the 31st of December, 1881, the parties being present at the store, he gave, by words of oral gift to his daughter, Mrs. Hattie H. Willets, $5,000 interest in the stock of goods on hand, and $10,000 to his daughter Julia E. Harwood, retaining for himself $10,000 in said stock; and thereupon William B. Harwood purchased of his sisters their interest in the goods, giving to each of them his notes for their respective amounts. It appears in the case

that at that time the firm was entirely solvent, the stock on hand and bills receivable being estimated at about $30,000 over and above the liabilities of the firm. On the 2d of January, 1882, the firm of W. A. Harwood & Sons was dissolved by mutual consent, and a new partnership was formed under the name of Harwood & Beckwith, to succeed the firm of W. A. Harwood & Son. Articles of agreement were entered into between the new partners, in which it was intended that William A. Harwood should be a special partner, he contributing $10,000, his remaining interest in the stock of goods of the firm of Harwood & Son. But the articles of partnership not complying with the statute, each of the parties became a general partner. By these articles it was agreed that William B. Harwood should contribute to the capital $15,000, that Beckwith should contribute $25,000 and William A. Harwood $10,000. At this time the firm appears to have been solvent, and it appears also that the sum of $10,000 contributed by William A. Harwood, was the interest reserved by him in the former stock and business, and that the capital of $15,000 contributed by William B. Harwood, consisted wholly of the stock so purchased from his said two sisters. In February following, William B. Harwood left for Europe to purchase goods, leaving the duty of caring for the business to his partner, William R. Beckwith. William A. Harwood was at that time in ill-health and gave no personal attention to the business. On or about the twenty-second of March, William B. Harwood received a dispatch while in Europe, that his stock of goods had been consumed by fire. He immediately sailed for home, reaching New York about the 16th of April, 1882, and on investigating the affairs of his firm he discovered that his partner Beckwith had fraudulently issued notes in the name of the firm, without the knowledge or consent of himself or William A. Harwood, to the amount of some $38,000, for which no consideration had been received by the firm, by reason whereof the firm was hopelessly insolvent. About the fifth of May Beckwith absconded and his whereabouts is unknown. He never paid in any portion of the $25,000 called for by the articles of copartnership, and the appellant asserts that the insolvency of the firm was wholly due to his fraudulent acts and his failure to pay in his share of the capital.

After the appellant became aware of the condition of the firm,

his sisters demanded payment of their notes, and he paid the same by drawing checks against cash in bank belonging to the firm (and another smaller indebtedness) to the sum of $14,589.51. The payment of these notes to the sisters under these circumstances is the alleged fraudulent act for which he is arrested in this action. It is not charged that he did any other act charged as fraudulent, except the making of an affidavit by which he described the firm as a limited one, but that is abundantly explained by the fact that it was the manifest intention to create a limited firm, and that it became general merely by an omission to comply with the statute. The defendant denies an intent to defraud, and the only question is whether the act of paying the personal indebtedness to the sisters, with knowledge of all the facts, was such a disposition of the property with intent to defraud creditors as renders him liable to arrest under the provisions of the Code.

· The court below disposed of the motion on the authority of *Wilson* v. *Robertson* (21 N. Y., 587) and *Menagh* v. *Whitwell* (52 id., 146). Those are cases in which assignments or other transfers had been made giving preferences to individual creditors to be paid out of the firm assets, and the court held that such assignments were fraudulent and void. The Court had no question before them in those cases as to whether or not the mere proof of such an act was fraud, within the meaning of the statute which authorizes the arrest of a debtor for fraudulently disposing of his property. In strictness they are not applicable to the case before us. The transaction between the defendant and his sisters may be void and fraudulent as against the creditors of the firm without imputing any actual fraudulent intent to either of the parties. The plaintiff holds the affirmative to establish something more than a transaction which the law will adjudge fraudulent and void as against creditors, because under the Code in order to justify a warrant of arrest there must be shown an actual and guilty intent to defraud creditors. A mere constructive fraud which the law implies because an act done is in violation of the statute, or of the rights of the creditors at common law, is not sufficient.

· · We see no reason to doubt that under the peculiar circumstances disclosed, the gift by the father, while he was perfectly solvent, to the daughters, was a valid one. It is true it was not consummated

by an actual physical delivery of the stock of goods, but the stock was so situated that the whole transaction of gift, followed by the purchase by the brother then in possession of the goods, of the respective shares of his sisters to whom he gave his notes; and his continued possession, coupled with the subsequent recognition by the father of such purchase and the treatment of his interest, in constituting the new firm, as being only to the extent of the remaining estimated value, to wit, $10,000, were, we think, enough to amount in law to a consummated gift *inter vivos*, and we see no ground upon which any third person can attack its validity. There seems to be no reason to doubt the good faith of the gift at that time. There is nothing in the case to show that the firm was not entirely solvent. So far as the evidence on that subject goes, the assets of the firm largely exceeded its liabilities. So that the question is reduced really to this, whether the act of preferring individual debts of William B. Harwood, and paying them out of money belonging to the firm, is evidence of such a guilty intent to defraud the creditors of the firm as charges him within the provisions of the Code authorizing an arrest. The mere act by one partner of paying individual debts with money belonging to the firm is not *per se* fraudulent.

If the firm be solvent no one has any right to complain of it, except his partners when it is done in violation of their agreement or to their injury; and if the several members of the partnership consent that one partner may pay his individual debts with firm property, the act is not unlawful, except as against creditors who have acquired some specific lien upon the property either at law or in equity by the commencement of proceedings to enforce the collection of their debts. (*Dimon* v. *Hazard*, 32 N. Y., 65; *Meech* v. *Allen*, 17 id., 300; *Kirby* v. *Schoonmaker*, 3 Barb. Ch., 46.)

In the *People ex rel. Caldwell* v. *Kelly* (35 Barb., 444) it was said by POTTER, J., that "in giving construction to this statute for the purpose of imprisoning or of justifying the imprisonment of a party,* * * the more humane interpretation should prevail." Where there is no evidence of guilty fraud in a debtor he should not be subject to arrest for acts of merely constructive fraud. Applying that principle to this case it seems to us, upon the whole of the facts before us, that it is not affirmatively shown that the appellant acted in paying the debts to the

sisters out of the firm money with any guilty intent to defraud the firm creditors, but with the intent to give preference to those debts upon the idea that he was justified in taking care of them before the firm debts were paid. Our opinion is that the papers fail to show any such guilty intent to defraud as the Code demands, in order to justify arrest and imprisonment.

The order should be reversed, and the order of arrest vacated, but on condition that the appellant stipulates not to prosecute for false imprisonment, and under the circumstances, without costs.

BRADY and DANIELS, JJ., concurred.

So ordered.