## CALDWELL'S CASE.

*Supreme Court, Fourth District; General Term, January*, 1862.

COMMON-LAW CERTIORARI.—HABEAS CORPUS.—EXECUTION AGAINST THE PERSON.—ACTIVE AND CONSTRUCTIVE FRAUD.

An order which may, by law, be made by a judge out of court, is not vitiated by being entitled at special term, nor is it necessary in such case to enter the order with the clerk.

Where judgment was obtained in the Supreme Court, within the Fourth District, upon which the judgment-debtor was taken in execution against his person upon the judgment, and a justice of the First District, upon habeas corpus, released the debtor from imprisonment;—*Held*, that a certiorari to review such proceedings should be made returnable in the First District.

On habeas corpus in behalf of a debtor taken under execution against the person, the regularity and propriety of the arrest may be inquired into, so far as to determine whether the creditor had any right or authority to issue the process. The prisoner is unlawfully detained if there be no judgment, or if the judgment be one on which no execution against the person can issue by law.

Where a defendant had made disposition of his property, in good faith, with no dishonest purpose, at various times, and for different purposes, by five separate instruments, three of which were valid, and two, in law, constructively fraudulent against creditors;—*Held*, that he had not disposed of his property with intent to defraud, within the meaning of the Code, § 179, subd. 5.

In all cases in which fraud is charged, proof of an actual intent should be required to justify an order of arrest. Constructive guilt of a debtor, who is innocent in fact, should not be held a sufficient ground for his imprisonment.

*It seems*, that no order of arrest can be granted under section 179 of the Code, subd. 5, except in an action for the recovery of money. (By BOCKES, J.)

On common-law certiorari no costs can be allowed.

Active or meditated fraud in the disposition of a debtor's property, is characterized by an actual dishonest intent governing the act. Constructive fraud consists in innocently doing some act forbidden, or omitting to do some act prescribed by law. (By POTTER, J.)

Certiorari, to review proceedings on habeas corpus, had before a justice of this court acting as judge at chambers.

By the return it appeared that Felix Collumb and John A. Iselin commenced an action in this court against Caldwell and others, to set aside certain instruments executed by Caldwell, on the ground that they were made to hinder, delay, and defraud his creditors. That action was put at issue, and terminated in a judgment in favor of the plaintiffs therein, in part, and among other things in their favor and against the relator for the costs of the action. The costs were adjusted at $554.93, for which sum judgment was entered. The clause of the decree relating to these costs was as follows: "And it is further ordered, adjudged, and decreed, that the plaintiffs recover of and from the defendant George Caldwell, their costs of this action as taxed, being $554\frac{93}{100}$ dollars, and have execution therefor."

Execution was issued against the property of Caldwell for these costs, and on its return unsatisfied, an execution against the person of Caldwell was issued, under which he was arrested and imprisoned in New York. Thereupon he presented his petition to Mr. Justice Sutherland, setting forth his imprisonment, with the cause thereof, to which petition was attached a copy of the execution under which he was held, and praying for the writ of habeas corpus, to the end that he might be discharged. The writ was granted, returnable the same day. Proceedings were thereupon had. Collumb and Iselin having been duly notified, appeared, and opposed the application, which terminated in an order directing the relator's discharge from arrest, the judge holding and deciding that the execution was unauthorized by law.

On the application of Collumb and Iselin, a certiorari issued to review those proceedings.

The writ of certiorari was tested, March 28, 1861, returnable before the justice of the Fourth District at the then next May general term.

The case came before the general term, first, On a motion to set aside or quash the writ of certiorari, on the ground that the writ was made returnable before the court in the Fourth District; and, secondly, On the return, in case the motion to quash for irregularity should be denied.

*Ira D. Warren* and *Francis Kernan*, for the motion.—I. The certiorari is irregular. It requires one of the judges of the Supreme Court, of the First District, to return the proceeding had on habeas corpus before him in the First District, to the general term of the Fourth District. This certiorari is a process to bring up the proceeding, upon which Judge Sutherland made his order for review, and under section 346 of the Code it can only be reviewed by the general term of the First District, for the following reasons, viz.: 1. The special proceeding sought to be reviewed was commenced in the First District. 2. The order made thereon was entered in the city and county of New York. The order for discharging, entitled at special term, is not thereby vitiated. (Matter of Knickerbocker Bank, 19 *Barb.*, 602.)

II. The judgment-record nowhere shows any actual fraud, nor any intent to defraud. The only fraud shown by the judgment-record is a constructive fraud. (Nicholson *a.* Leavitt, 4 *Sandf.*, 289 ; 1 *Story's Eq. Jur.*, § 258 ; 1 *Burrill's Law Dict.*, 269.) Proof of an actual intent, existing in the mind of the debtor and governing his acts, must be shown in all cases in which fraud is charged, in order to sustain an arrest. (Burchell *a.* Strauss, 8 *Abbotts' Pr.*, 53 ; 28 *Barb.*, 293 ; Spies *a.* Joel, 1 *Duer*, 669.) The only thing that could have authorized an execution against the body, would have been a special finding of fact by the referee, that the conveyances were made with an actual intent to cheat and defraud his creditors. In the absence of any such finding, such an execution was illegal and unauthorized. 1. It is a settled rule of law, that fraud is never to be presumed, but must always be proved. (Grover *a.* Wakeman, 11 *Wend.*, 187, 192.) 2. The presumption of law is always against bad faith. (Brown *a.* Bartlett, 10 *Smedes and Marsh*, 268–274; 8 *Robinson, La.*, 403.) 3. In equity, fraud is never to be presumed. (Bogert *a.* Haight, 9 *Paige*, 297, 302; *Rob. Fraud. Conv.*, 528.) 4. The burden of proving fraud rests upon the party making the charge, and it must be clearly established. (Dunham *a.* Gates, 3 *Barb. Ch.*, 196.) It was never intended by section 179 of the Code, that a man should be arrested for applying, or attempting to apply, his property *bona fide* to the payment of his just debts. If a party is imprisoned on execution on final judgment, "the judgment must find that the fraud was committed." (Harris *a.* Cone, 10 *How. Pr.*, 259.)

The referee's findings of fact show an entire absence of any fraudulent intent, and none can be inferred.

III. " The regularity and propriety of an execution against the person may be inquired into on habeas corpus, and in all cases may be impeached by showing either that there was no judgment, or that the judgment does not show a case authoriz-ing the execution upon which the defendant is arrested." (*Crary's New York Pr.*, 120; People *a.* Willett, 15 *How. Pr.*, 210; 6 *Abbotts' Pr.*, 37; *Hurd on Habeas Corpus*, 332; 2 *Rev. Stat.*, 4 ed., 801, § 41, subd. 4, 6.)

IV. The action of Justice Sutherland should be sustained, and this certiorari dismissed, with double costs. (2 *Rev. Stat.*, 4 ed., 816, § 12.)

*W. D. White*, opposed.

By the Court.*—Bockes, J.—It appears from the papers that the proceedings were before Judge Sutherland, as an officer and not as a court. The petition for the writ of habeas corpus was addressed to " Hon. Josiah Sutherland, Justice of the Supreme Court," who allowed the writ, by indorsing thereon his allowance, as follows : " Allowed, this eleventh day of March, 1861. Josiah Sutherland, Justice ;" and was returnable before one· of the justices at the court at chambers. It was returned to him at the time and place therein appointed ; and thereupon proceedings were had before him, which resulted in his granting and signing an order for Caldwell's discharge, on the 27th of March following. The order is entitled at special term, but it is signed by the justice ; and such entitling does not vitiate it. It was said (see Matter of the Knickerbocker Bank, 19 *Barb.*, 602) that the mere entitling an order as at special term, which, by law, may be made by a judge out of court, does not vitiate the order.

Nor is the entry of the order with the clerk of any importance on this·motion ; such entry cannot affect the question, whether the writ of certiorari, to bring up the proceedings, was regularly issued. I am not aware of any practice which requires an order of discharge, granted by a judge out of court, in a proceeding

---

* Present, Rosekrans, P. J., Potter and Bockes, JJ.

on habeas corpus, to be entered. The Code has no application to these proceedings. (*Code*, § 471.) But the former practice still prevails in such cases.

The proceeding is before an officer out of court, and while it is well to deposit all papers, in such cases, with the clerk, with a view to their preservation, there is no statute or rule of practice which requires the orders in such cases to be entered.

It appearing, therefore, that Judge Sutherland acted as an officer,—as a judge out of court, in issuing the habeas corpus, and in granting the discharge of Caldwell,—the writ of certiorari was properly directed to him. And following the old practice, it was regular, also, to make the writ of certiorari returnable at general term. The writ, too, was properly allowed by a justice of this court. (2 *Rev. Stat.*, 573, § 69; 3 *Ib.*, 5 ed., 892, § 85.) The question is then, simply, whether, inasmuch as the proceeding was had before an officer in the First Judicial District, the writ is regular, in being made returnable in the Fourth District.

This is purely a question of practice, with no statute or express rule of court to control. It grows out of the change in our judicial system, by which the State is divided into eight districts, each of which has its own general term of the court. In most cases, the Code of Procedure provides for the decision of causes, declaring where they shall be heard and determined, generally requiring them to be heard and decided in the district in which the case arose, or the parties, or some of them reside. Sometimes the case is permitted to be carried into an adjoining district; but the general rule of practice has been to require causes to be heard on review in the district in which the proceeding was had; and it is very manifest that this is a wholesome rule, based on considerations of propriety and convenience.

It is urged that the writ is properly returnable in the Fourth District, for the reason, that the record on which the execution issued, under which the relator was imprisoned, is in the Fourth District. But that fact does not affect the question.

The proceeding by habeas corpus was an original proceeding in the city of New York. The relator was there imprisoned, and there were had the proceedings for his discharge, making the record here sought to be reviewed. The return to the writ of certiorari is made from the papers before the officer, with his

certificate of the proceedings and determination. Where the evidence used on that proceeding was obtained, has no controlling influence in determining where the review should be had. The question is, simply, whether it is permissible for a party to take a case for review on certiorari from the district in which the proceeding was had, to any other which the applicant for the writ may select. To allow this will be against all analogy in practice, and will be conducive often of great inconvenience.

In analogy to other cases in which the practice is settled, either by the statute or by precedent, I think the writ in this case irregular, for the reason that it is made returnable in the Fourth instead of the First District.

But we are inclined to disregard this irregularity, and to consider the case on the return;—here, however, declaring the practice by which we shall be governed in future cases. We are induced to adopt this course, inasmuch as we entertain no doubt in regard to jurisdiction, and the case has been fully and carefully argued before us.

It is first insisted that the officer had no right to inquire into the regularity of the process under which the relator was imprisoned; it appearing that it was issued on the judgment or decree of a court of competent jurisdiction. But the question is not one of mere irregularity in the process. It is, whether the process is authorized by the judgment of the court or by any provision of law.

The statute prescribes who shall be entitled to prosecute the writ of habeas corpus; and denies it to persons committed or detained by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon any such judgment or decree. It also declares that it shall be the duty of the court or officer, before whom the party shall be brought in such writ, to inquire into the cause of confinement or restraint, and to remand such party, if it shall appear that he is detained in custody by virtue of any such judgment or decree, or of any execution issued thereon. The statute further declares, that if it appears on the return of the writ that the prisoner is in custody by virtue of civil process, &c., then, such person can only be discharged in one of the following cases, enumerating several, among which

·are the following : when the process, though in proper form, has been issued in a case not allowed by law ;˙and when the process is not authorized by any judgment, order, or decree of any court, nor by any provision of law. (2 *Rev. Stat.*, 568, §§ 40, 41 ; 3 ·*Ib.*, 5 ed., 887, §§ 55, 56.) By declaring that the prisoner can only be discharged in certain cases, when in custody under civil process, it is clearly implied that he shall be discharged in such cases. That is, when it should appear on the return of the writ that the process, though in· proper form, had been issued in a case not allowed by law, or when the process was not authorized by any judgment, order, or decree of any court, nor by any provision of law. So it was held, at special term, that the process of execution may be impeached by showing it to be unauthorized by the judgment on which it issued. (26 *Barb.*, 78.) In this case cited, judgment was obtained against the defendant for negligence as innkeeper. An execution issued against his · person, under which he was arrested and imprisoned. He was discharged on habeas corpus, the court holding that the judgment did not show a cause for arrest. The point was taken as it is here, that the right to issue the execution could not be inquired into on habeas corpus. But the court held that the regularity and propriety of the arrest, under the execution, might be examined into, so far as to determine whether the party had any right or authority to issue the process. I am satisfied this was correctly held. In this view it becomes a question of jurisdiction. The question is, whether the process has the sanction and authority of law. If there be no authority to arrest the party, he should be discharged. Certainly, if there were no judgment, there would be no authority for the execution ; and this the relator could show on the return of the writ. So, also,· if the execution on the judgment be unauthorized by law, it stands as if there were no judgment. Therefore, it has been well said that final process may, in all cases, be impeached by showing, either that there is no judgment, decree, or conviction on which it is founded, or that the judgment, decree, or conviction is void ; or that the judgment does not show a case authorizing the execution on which a party is arrested. (*Crary's Pr.*, 120, and cases cited ; 12 *Wend.*, 229.) In the last case cited, Beatty was imprisoned on *ca. sa.* for costs issued on a decree in ·chancery. He was discharged on habeas corpus, on the ground

that he could not be imprisoned on an execution for such costs·
Section 42 declares that no court or officer, on the return of
a habeas corpus, shall have power to inquire into the legality or
justice of any process, judgment, decree, or execution, specified
in the preceding 22d section. But this, doubtless, was intend-
ed to prohibit the use of this writ as a means of reviewing the
judgment and decision of courts and officers. It is not compe-
tent under the writ of habeas corpus to inquire into the truth of
the facts determined by the record, or the justice or legality of
the adjudication, by virtue of which a party is detained, except
as to jurisdiction. But jurisdiction may be inquired into ;—also,
whether it has been exercised in a lawful manner. It follows,
therefore, that a person is unlawfully detained who is imprisoned
under execution, if there be no judgment, or if the judgment
be one on which no execution against the person can issue by law.

This brings us to the question, whether the execution, under
which Caldwell was imprisoned, was authorized by the judgment .
on which it issued.

The Code prescribes the mode of enforcing judgments by ex-
ecution. It declares that writs of execution for the enforcement
of judgments are modified in conformity thereto (§ 283); and
gives three kinds: one against the property of the judgment-
debtor ; another against his person ; and the third for the delivery
of the possession of real or personal property, with or without
damages, for withholding the same (§ 286). In regard to ex-
ecution against the person, it provides that such execution may
be issued, if the action be one in which the defendant might
have been arrested, as provided in sections 179 and 181. (See
§ 288.) The action by Collumb and Iselin against Caldwell and
others, was to set aside certain instruments made by Caldwell,
conveying his property, as was alleged, to hinder, delay, and
defraud his creditors, and for other relief usual in such cases. In
this action, could Caldwell have been arrested under sections
179 and 181 of the Code? Section 179 declares that the de-
fendant may be arrested in either one of the five cases there
specified, none of which need here be noticed except the fifth,
which provides that a defendant may be arrested who has " re-
moved or disposed of his property, or is about to do so, with in-
tent to defraud his creditors." No order of arrest was obtained
in this action ; therefore, it becomes necessary to look into the

record, for the purpose of determining whether the action falls within the provisions of subdivision 5 of section 179, above set out. The complaint charges, in general terms, that certain instruments executed by Caldwell, disposing of his property, were made with intent to hinder, delay, and defraud his creditors; on this issue was taken, and the referee to whom the action was referred finds three of the instruments attacked good and valid, and two void; not, however, for actual or active fraud on the part of Caldwell, but for constructive fraud, or fraud in law. Thereupon judgment was entered, declaring three of the instruments good and valid, and two fraudulent and void; also, awarding costs against Caldwell. Does the record show a case for the arrest of Caldwell, under section 179, if an application had been made before judgment, on the facts determined by it? That is, on commencing the action, suppose the same facts were established, by affidavit, as are now established by the record, and an application had been made thereon for an order of arrest against Caldwell, could it have been properly granted? What would be the facts on which the application would be based? Stating all that is made to appear by the record, they would stand as follows: That Caldwell had made disposition of his property at various times and for different purposes, by five separate instruments,—three of which were valid, and two of which were void. That all were made by him in good faith, with no dishonest purpose; but that two of them were, in law, constructively fraudulent. Could it be found, on these facts, that he had disposed of his property with intent to defraud, within the meaning of subdivision 5 of section 179? I think not. The clause of the Code referred to, unquestionably means fraud in fact,—meditated fraud, a purpose existing in the mind to do a dishonest act. Judge Duer says (1 *Duer*, 669), that he is clear in the opinion that proof of an actual intent ought to be required to justify an order of arrest. The constructive guilt of a debtor who is innocent in fact, should never be held to be a sufficient ground of imprisonment. This I regard as a sound exposition of the law of arrest. The intent with which the act is done should control. An assignor may, through ignorance, hence innocently, insert a clause in his assignment which will render it fraudulent in law, yet be perfectly free from any meditated fraud or design to perpetrate a wrong. In such

case he ought not to suffer arrest any more than the man who is unable to pay his note when due. The policy of the law is to pun-. ish the guilty, not to oppress the innocent. To the same effect is Birchell *a.* Strauss (8 *Abbotts' Pr.*, 53 ; S. C., 28 *Barb.*, 293). In this case, it was held at general term in the First District, that in all cases in which fraud is charged, proof of an actual intent ought to be required to justify an order of arrest. That con-structive guilt of a debtor, who is innocent in fact, should not be held a sufficient ground for his imprisonment. This con-struction is in accordance with the spirit of the law abolishing imprisonment for debt, and also with an enlightened humanity.

But I am of the opinion that no order of arrest is authorized, in an action in equity, to set aside an assignment or other in-strument on the ground that it was made to hinder, delay, and defraud creditors,—that subdivision 5 of section 179 has no ap-plication to that class of actions. In such case, the creditor has already obtained his judgment, and the new action is in aid of the former, to reach property, which, in justice, ought to be ap-plied to its payment. The judgment is special; and rarely, if ever, does it direct the recovery of money, except for the costs of the action. In what amount should the party be held to bail? Should it be in an amount to cover costs? or in an amount equal to the property fraudulently transferred? or in the full amount of the judgment? If an order of arrest is authorized in this class of actions, some amendments of the Code should be adopted to regulate the practice. If the object of holding to bail be to afford security for the payment of the debt, no order of arrest need be obtained, where the property fraudulently transferred remains within the reach of the proceeding in equity, and is sufficient to satisfy the claim and costs.

In my judgment, no order of arrest can be granted under sub-division 5 of section 179, except in actions for the recovery of money. This view is strengthened by section 183, which pro-vides that the order may be made to accompany the summons, or at any time afterwards before judgment; that is, before judg-ment is obtained on the debt or demand, payment of which is sought to be enforced by action. But in the case of an equi-table action to set aside a sale or transfer of property for fraud, the plaintiff must have exhausted his remedy at law before he can proceed.

In this view, the execution against Caldwell, under which he was arrested and detained, was not authorized by any judgment, or order, or decree of any court, nor by any provision of law.

I am entirely satisfied that the order granted by Mr. Justice Sutherland, discharging Caldwell from imprisonment, was right; and that the proceedings had before him on habeas corpus should be affirmed. But this being on common-law certiorari, no costs can be allowed. (20 *How. Pr.*, 304; 10 *Ib.*, 436.)

Potter, J.—There is but one point in this case, as I regard it, that involves an important principle requiring discussion. The relator was imprisoned upon an execution issued against him upon a judgment or a decree, in which it had been declared that a voluntary assignment made by the relator was fraudulent and void, as against the creditors of the relator, by reason of some want of compliance with the statute relative to the making of such conveyances; and he had been released from the imprisonment upon habeas corpus, upon the ground that he was not liable to imprisonment in such a case. This raises the question, whether there is a distinction, between what is called active or meditated fraud,—sometimes called actual fraud, committed with actual intent existing in the mind, and governing the act of the grantor at the time,—and constructive fraud,— to wit, such as is adjudged to be fraud by reason of the doing or omitting to do some act in the precise manner prescribed by law. That is, whether the right to imprison the defendant in a judgment, at all, depends upon this distinction in the character of the fraud; it being undisputed that the fraud in this case was the latter, viz., constructive fraud.

Cases are found in the books that recognize this distinction, as determining the right to imprison, or at least the right to hold, a defendant liable to arrest. (See Spies *a.* Joel, 1 *Duer*, 669; Birchell *a.* Straus, 8 *Abbotts' Pr.*, 53; 28 *Barb.*, 293.) It is not difficult to conceive of acts that may be performed in making an assignment through accident, inadvertence, mistake, through the influence of mistaken advice, or of the actual omission to do some act, that may be consistent with entire innocence of intent,—made with simplicity of heart,—or even through weakness of mind; and yet, such acts, or omissions to act, must still by the settled rules

of law in regard to such transfers, be held to be fraudulent and void. Is it then, the design and spirit of this statute, that the consequence of an act of conveyance so innocently made, and so, by a necessity of law, declared to be fraudulent and void as to creditors, shall subject the weak, the simple, the mistaken, or morally innocent assignor to the same penalties of punishment, by imprisonment, as is held in regard to him, who, by an intentionally fraudulent act, makes the conveyance with existing design at the time to commit a fraud? The moral distinction it seems to me, is palpable. It is exactly the difference between the existence, and the absence of criminal intent,—a difference that has ever existed in practice—has ever been recognized in the criminal code—is uniformly followed in the criminal courts in the trials of offences of every grade—is acknowledged as the controlling feature in the rule of evidence to determine crime—and is the basis upon which punishment is inflicted. The punishment for homicide, which is a general term, including what may or may not be criminal, depends upon whether the facts show it to be justifiable, excusable, or premeditated. The right to imprison for fraud, is based upon the same principle. It is to punish for an offence intentionally committed against the moral and municipal law. The affinity between the moral and the municipal law is strikingly approximate and assimilable. The moral, being the basis upon which the municipal is built, if a question of doubt arise as to the latter, it should always be solved, if it may be, by a resort to the former for its determination.

It is, says Lord Kenyon, a principle of natural justice of our law, that the intention and the act must both concur to constitute the crime. (7 *T. R.*, 510). "*Actus non facit reum nisi mens sit rea.*" True, when the question before the court to be tried is in reference to the law regarding the transfer of property, or to the weight and consideration of the law of evidence in respect to it,—taking the law as it is now settled, it would not be an easy task if attempted, either to attack or to weaken the very logical reasoning and conclusion of my brother Rosekrans; that we are bound to presume a fraud. He is sustained when the law is so applied,—in such a case, and for such a purpose, —both upon principle and authority.

The intent may, in such case, be inferred; because it is estab-

lished by the law of evidence to be the necessary legal and natural conclusion and consequence of the act, or of the omission, without otherwise proving the moral intent of the party, than by this legal presumption; and this rule of evidence is made so conclusive of the existence of a legal fraud, so far as it affects the contract, as to exclude all explanations of innocence of intent. In the construction to be given to a statute which authorizes punishment of fraud when the proof is made in a civil action, there is, or there should be, no difference in holding the rule; it should be the same as if the party was on trial for the same offence in a criminal action, to wit: that fraud is never to be presumed; it must be proved. Indeed, this is the rule in all other civil actions, where fraud is the basis of the right to recover. "Dwarris" (p. 634), in his work on the construction of statutes, lays down the rule, "that the general words of a penal statute shall be restrained for the benefit of him against whom the penalty is inflicted." Domat lays down the rule, "that laws that restrain natural liberty ought to be so inter-. preted as to receive all practical mitigation in favor of equity and humanity;" and Professor Leiber, in his Legal and Political Hermeneutics (p. 226) says, "Nothing contributes more to the substantial protection of individual liberty than an habitually close interpretation and construction." It seems to be conceded that in this case there is not any evidence of what in the ordinary sense of the term is denominated actual fraud, or, as it is sometimes called, meditated fraud, as contradistinguished from constructive fraud, which, as we have seen, may result from an omission to act. Actual fraud implies deceit, artifice, trick, design, some direct active operation of the mind. Constructive fraud is indirect, and is implied from some other act, or omission to act, which may be, in moral contemplation, entirely innocent; but which without the explanation, or actual proof of its innocence, is evidence of fraud. It appears to me, therefore, that in giving construction to this statute for the purpose of imprisoning or of justifying the imprisonment of a party as a punishment for an offence,—a construction upon which depends the restraint of individual natural liberty,—the more humane interpretation should prevail. Liberty and freedom are man's natural condition: presumptions should be in favor of this condition.

This is the proper, and should be the universal rule in the administration of human laws; and, it seems to me, should be applied to the decision of this case.

I concur, therefore, in the views of my brother Bockes, in affirming the action upon the habeas corpus.

Proceedings affirmed.

